1

2

3

4                       UNITED STATES DISTRICT COURT

5                      NORTHERN DISTRICT OF CALIFORNIA

6

7    FARELLA BRAUN + MARTEL LLP,          Case No. 24-cv-01746-SI

8                   Plaintiff,
                                          ORDER GRANTING SUMMARY
9         v.                              JUDGMENT

10   FEDERAL DEPOSIT INSURANCE            Re: Dkt. No. 98
     CORPORATION,
11
                   Defendant.
12

13        Defendant has requested summary judgment in its favor.  Dkt. No. 98.  For the reasons stated

14   below, the Court GRANTS defendant's motion.  However, the Court holds that defendant must pay

15   out the $2,679.14 that the parties agree was mistakenly withheld from plaintiff.

16

17                                  **BACKGROUND**

18   **I.    Relevant Factual Background**

19        This litigation arises out of legal work performed by plaintiff Farella Braun + Martel for the

20   First Republic Bank before it failed on May 1, 2023.  Defendant Federal Deposit Insurance

21   Corporation (FDIC) was appointed to be the receiver for the failed bank.  Dkt. No. 98-10 ¶ 3.  The

22   FDIC then published a notice that any claims against First Republic Bank must be filed by

23   September 5, 2023.  *Id.*  The FDIC ultimately processed almost 6,000 claims against the bank.  *Id.*

24   ¶ 4.

25        On August 24, 2023, plaintiff submitted a proof of claim for $50,704.34 encompassing

26   eleven separate bills for work performed in 2022 and early 2023.  Dkt. Nos. 98-4, 98-6.  On

27   September 25, 2023, the FDIC asked plaintiff to supply line-item detail for each invoice to support

28   its claim.  Dkt. No. 98-7.  The FDIC requested this information by October 9, 2023.  *Id.*  The notice

United States District Court
Northern District of California

also included language alerting plaintiff that its claim would be disallowed if the requested material was not provided within the statutory 180-day determination period.  *Id.*  The next day, plaintiff provided the FDIC with eleven invoices and plaintiff attorney Gary Kaplan wrote, "Let me know if you seek any further information to review our claim in the First Republic Bank receivership."  Dkt. No. 104-4 at 2.

Plaintiff did not hear anything further from the FDIC until FDIC sent a notice of partial allowance on February 7, 2024.  *Id.* at 3.  That notice informed plaintiff that it would receive payment for $30,966.65 but not the remaining $19,737.69.  Dkt. No. 98-5.  The latter portion was disallowed for the following reason: "Invoice 388556C is duplicative of Invoice 388556A.  Invoices 387229 and 384001 are disallowed as not proven to the satisfaction of the receiver."  *Id.*  The detail for these disallowed invoices is as follows:

| Invoice No. | Date | Total Due |
|---|---|---|
| 384001 | January 31, 2023 | $3,058.55 |
| 388566C | April 6, 2023 | $8,500.00 |
| 387229 | April 27, 2023 | $5,500.00 |
| | **Total** | $17,058.55 |

Dkt. No. 98-6.  The parties agree that the disallowed amount in the February 7, 2024 notice ($19,737.69) should have been $17,058.55.  *See* Dkt. No. 98-1 at 3; Dkt. No. 104 at 2.  The FDIC informed plaintiff that it could pursue its claim via a lawsuit filed within 60 days of its February 7, 2024 notice.  Dkt. No. 98-5.

On March 21, 2024, plaintiff filed this judicial review action under 12 U.S.C. § 1821(d)(6).  Dkt. No. 1.

**LEGAL STANDARD**

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v.*

2

*Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting then Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment . . . ." *Id.* However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c).

## DISCUSSION

Defendant first argues that the Court lacks jurisdiction to hear plaintiff's claim. To consider this argument, the Court reviews the relevant provisions of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1821.

The FDIC's 180-day claim determination period starts on the day a claim is filed. 12 U.S.C. § 1821(d)(5)(A)(i). Under 12 U.S.C. § 1821(d)(5)(D)(i), a receiver may disallow claims "not proved to [its] satisfaction." Subparagraph (E) of paragraph (5) states, "No court may review the Corporation's determination pursuant to subparagraph (D) to disallow a claim." *Id.* § 1821(d)(5)(E).

A separate paragraph in the statute allows for agency administrative review or judicial review if requested or filed within 60 days of the earlier of the end of the 180-day claim determination period or the date of the notice of disallowance. *Id.* § 1821(d)(6)(A). These provisions appear at odds, and the law "is not a model of statutory clarity." *Bueford v. Resol. Tr. Corp.*, 991 F.2d 481, 486 (8th Cir. 1993). This Court agrees with other courts that the best way to reconcile these provisions is with an understanding that a court may review a claim de novo, but may not review the FDIC's determination of the claim. *See id.* ("We are particularly persuaded by the interpretation advanced by other circuits that section 1821(d)(5)(E) directs the district courts to analyze claims against failed banking institutions de novo."); *see also Brady Dev. Co. v. Resol. Tr. Corp.*, 14 F.3d 998, 1003 (4th Cir. 1994) ("If judicial relief is chosen, review is by a *de novo* determination of the claim, not a review of the administrative disallowance of the claim.").

By citing the judicial review provisions in 12 U.S.C. § 1821(d)(6), plaintiff's complaint sufficiently established the Court's jurisdiction. Defendant argues that, according to the complaint, plaintiff "seeks judicial review of the partial disallowance by the defendant FDIC," which is barred by 12 U.S.C. § 1821(d)(5)(E). Dkt. No. 105 at 2 (citing Dkt. No. 1 ¶ 1). The Court does not read the complaint so narrowly. The Court understands the complaint to ask for the Court's de novo review of the validity of the claim itself, not the propriety of defendant's initial rejection. The Court retains jurisdiction for this review.

Defendant next contends that if the Court considers plaintiff's claim, the Court's review must be limited to the material presented to FDIC during the 180-day claim window. In defendant's view, to consider material not presented to the FDIC would frustrate the purpose of FIRREA. The Ninth Circuit summarized that purpose as follows:

> Congress enacted the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, 12 U.S.C. § 1821, to enable the federal government to respond swiftly and effectively to the declining financial condition of the nation's banks and savings institutions. The statute grants the FDIC, as receiver, broad powers to determine claims asserted against failed banks. 12 U.S.C. § 1821(d)(3)(A).
>
> To effectuate this power, Congress created a claims process for the filing, consideration and determination of claims against insolvent banks. 12 U.S.C. § 1821(d)(3)-(10). The receivership claims process "allow[s] the FDIC to quickly resolve many of the claims against failed financial institutions without unduly burdening the District

1    Courts." H.R.Rep. No. 101–54(I), 101st Cong., 1st Sess., *reprinted in*
      1989 U.S.C.C.A.N. 87, 215.

2    *Henderson v. Bank of New England*, 986 F.2d 319, 320 (9th Cir. 1993).

3         Defendant cites several cases to bolster its claim. In *Brown Leasing Co. v. F.D.I.C.*, the

4    plaintiff amended a complaint to add new claims in federal court for conversion and breach of

5    contract against the FDIC without having brought those claims through the administrative claims

6    process. 833 F. Supp. 672, 673 (N.D. Ill. 1993), *aff'd sub nom. Brown Leasing Co. v. Cosmopolitan*

7    *Bancorp, Inc.*, 42 F.3d 1112 (7th Cir. 1994). The federal court found that "that the FDIC is entitled

8    to fair notice of the facts and legal theories on which a claimant seeks relief from the failed

9    institution." *Id.* at 675. Similarly, in *Ravenswood, LLC v. F.D.I.C.*, the plaintiff sought relief under

10   a damages theory it had not presented to the FDIC during the administrative claims process. No.

11   10-CV-1064, 2011 WL 1079495, at *1 (N.D. Ill. Mar. 21, 2011). The court dismissed the new claim

12   based on the plaintiff's failure to bring that theory through the administrative process. *Id.* at *5.

13   The court asked rhetorically, "How was the FDIC–R supposed to respond to a theory it did not know

14   Ravenswood was presenting?" *Id.*; *see also 15th & Spruce Bldg. LLC v. Colorado Cap. Bank*, No.

15   12-CV-00851-REB-MEH, 2012 WL 6814127, at *5 (D. Colo. Nov. 30, 2012), *report and*

16   *recommendation approved sub nom. 15th & Spruce Bldg. LLC v. F.D.I.C.*, No. 12-CV-00851-REB-

17   MEH, 2013 WL 104890 (D. Colo. Jan. 9, 2013) ("Though the FDIC could have theoretically

18   conducted further investigation, the Court finds that requiring the FDIC to ensure that the asserted

19   Proof of Claim presents the appropriate theory of recovery conflicts with FIRREA's intent to enable

20   receivers to 'deal expeditiously with failed financial institutions' and is otherwise unreasonable.").

21        Although plaintiff here only presents new evidence directly to the Court, not new claims or

22   theories of damages, the Court extends the reasoning of these cases to the current circumstances. If

23   a plaintiff could withhold evidence from the FDIC and then seek a remedial ruling in Court with

24   newly presented evidence, it would frustrate the purpose of FIRREA to encourage speedy resolution

25   of claims. To be sure, plaintiff here did not intentionally hide any evidence. On the contrary,

26   plaintiff expected to receive notice from the FDIC if its documentary submissions were insufficient

27   to support their claim. From a customer service perspective, plaintiff's expectation was not

28   unreasonable. But the FDIC had to deal with nearly 6,000 claims resulting from the failure of the

United States District Court
Northern District of California

First Republic Bank.  *See* Dkt. No. 98-10 ¶ 4.  It was not legally obligated to repeatedly follow up with claimants whose documentation was lacking, and plaintiff unfortunately did not proactively seek reassurance.

Thus the Court only considers the evidence submitted to the FDIC within the claim determination window.  The FDIC refused payment for three invoices that plaintiff sent after the FDIC requested further documentation.  These invoices listed the legal fees and costs and a short description of the nature of the work provided—for example, "Review new hotel management agreement and review and edit proposed form of Hotel Management Agreement Assignment and Subordination Agreement and confer with [First Republic Bank employee] regarding issues pertaining to same."  *See* Dkt. No. 98-8.  The invoices do not contain any detail about the number of hours worked, billing rates, or the individuals who performed the work.  *See id.*  Plaintiff did not provide any evidence of a flat fee agreement to the FDIC before the claim determination window expired.  Dkt. No. 98-10 ¶ 8.  The FDIC considered one invoice (388556C) as duplicative and two others as lacking sufficient detail.  Dkt. No. 98-5.

Reviewing the disallowed invoices, the Court finds the detail contained therein insufficient to merit payment for the claims.  The Court does not question plaintiff's veracity or intent behind submitting these claims.  However, requiring billing details—including rates and hours worked or a flat fee agreement if one existed—is necessary and fair to protect the interests of the FDIC and the other creditors of the failed bank.  Since plaintiff did not provide these details in a timely fashion, the Court GRANTS defendant's motion for summary judgment.

///

///

///

///

///

///

///

///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendant's motion for summary judgment.   However, since the parties agree that the FDIC mistakenly disallowed $2,679.14, the FDIC shall pay plaintiff that amount within 30 days of this order.

**IT IS SO ORDERED**.

Dated: September 5, 2025

SUSAN ILLSTON
United States District Judge